# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| TANNER LEE TOMLINSON, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. CIV-15-699-STE |
| | ) |
| CAROLYN W. COLVIN, Acting | ) |
| Commissioner of the Social Security | ) |
| Administration, | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM OPINION AND ORDER

Plaintiff brings this action pursuant to 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner of the Social Security Administration denying Plaintiff's application for disability insurance benefits under the Social Security Act. The Commissioner has answered and filed a transcript of the administrative record (hereinafter TR. ____). The parties have consented to jurisdiction over this matter by a United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). The parties have briefed their positions, and the matter is now at issue. Based on the Court's review of the record and the issues presented, the Court **REVERSES** the Commissioner's decision and **REMANDS** the matter for further administrative proceedings.

## I. PROCEDURAL BACKGROUND

Plaintiff's application for disability insurance benefits was denied initially and on reconsideration. Following a hearing, an Administrative Law Judge (ALJ) issued an unfavorable decision. (TR. 25-32). The Appeals Council denied Plaintiff's request for

review. (TR. 1-4). Thus, the decision of the ALJ became the final decision of the Commissioner.

## II. THE ADMINISTRATIVE DECISION

The ALJ followed the five-step sequential evaluation process required by agency regulations. *See Fischer-Ross v. Barnhart*, 431 F.3d 729, 731 (10th Cir. 2005); 20 C.F.R. § 404.1520. At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since December 29, 2010, the alleged disability onset date. (TR. 28). At step two, the ALJ determined Mr. Tomlinson had severe impairments of uncontrolled hypertension, diabetes mellitus, diabetic neuropathy, and obesity. (TR. 28). At step three, the ALJ found that Plaintiff's impairments did not meet or medically equal any of the presumptively disabling impairments listed at 20 C.F.R. Part 404, Subpart P, Appendix 1 (TR. 28).

At step four, the ALJ found Plaintiff had the residual functional capacity (RFC) to:

> [P]erform less than the full range of light work as defined in 20 CFR 404.1567(b). He can lift/carry or push/pull 20 pounds occasionally and 10 pounds frequently. In an 8-hour workday, he can stand/walk for 2 hours (30 minutes at a time) and sit for 6-8 hours (2 hours at a time), Climbing stairs, balancing, bending/stooping, kneeling, crouching, crawling, and walking on uneven ground are occasional. The claimant cannot climb ladders, ropes, or scaffolds.

(TR. 28).

Based on this finding, the ALJ found that Plaintiff could perform his past relevant work as a security guard and jail/correctional officer. (TR. 31). Despite this finding, the ALJ proceeded to step five. There, he presented the limitations from the RFC to a vocational expert (VE) to determine whether there were other jobs Plaintiff could perform. (TR. 67-68). Given the limitations, the VE identified three jobs from the

Dictionary of Occupational Titles. (TR. 74-75). The ALJ adopted the testimony of the VE and made an alternative step five finding that Mr. Tomlinson was not disabled based on his ability to perform the identified jobs. (TR. 32).

## III. ISSUES PRESENTED

On appeal, Plaintiff alleges the ALJ: (1) improperly evaluated medical evidence, (2) failed to perform a proper step four analysis, and (3) erred in failing to consider Mr. Tomlinson's "borderline" age.

## IV. STANDARD OF REVIEW

This Court reviews the Commissioner's final "decision to determin[e] whether the factual findings are supported by substantial evidence in the record and whether the correct legal standards were applied." *Wilson v. Astrue*, 602 F.3d 1136, 1140 (10th Cir. 2010). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quotation omitted).

While the court considers whether the ALJ followed the applicable rules of law in weighing particular types of evidence in disability cases, the court does not reweigh the evidence or substitute its own judgment for that of the Commissioner. *Bowman v. Astrue*, 511 F.3d 1270, 1272 (10th Cir. 2008) (quotations and citations omitted).

## V. THE ALJ'S CONSIDERATION OF THE MEDICAL EVIDENCE

Mr. Tomlinson alleges the ALJ: (1) erred in his evaluation of the opinions from Dr. Lisa Duhon and (2) improperly rejected the opinions of State Agency physicians. Only the first allegation has merit.

### A. ALJ's Duty in Evaluating Medical Opinions

Regardless of its source, the ALJ has a duty to evaluate every medical opinion in the record. *Hamlin v. Barnhart*, 365 F.3d 1208, 1215 (10th Cir. 2004); 20 C.F.R. § 1527(c). The weight given each opinion will vary according to the relationship between the claimant and medical professional. *Hamlin*, at 1215. In evaluating a treating physician's opinion, the ALJ must follow a two-pronged analysis. First, the ALJ must determine, then explain, whether the opinion is entitled to controlling weight. *Langley v. Barnhart*, 373 F.3d 1116, 1119 (10th Cir. 2004).

If controlling weight is declined, the ALJ must assess the opinion under a series of factors which are considered when assessing *any* medical opinion, regardless of its source. These factors include: (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion. *Krausner v. Astrue,* 638 F.3d 1324, 1330 (10th Cir. 2011); 20 C.F.R § 404.1527.

Although the ALJ need not explicitly discuss each factor, the reasons stated must be "sufficiently specific" to permit meaningful appellate review. *See Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th Cir. 2007); SSR 96-2p, at 5. If the ALJ rejects an opinion completely, he must give "specific, legitimate reasons" for doing so. *Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003) (internal citations omitted). An ALJ may

reject a physician's opinion outright only on the basis of contradictory medical evidence and not due to his own credibility judgment, speculation, or lay opinion. *McGoffin v. Barnhart*, 288 F.3d 1248, 1252 (10th Cir. 2002).

### B. Opinions from Dr. Duhon

Dr. Duhon began treating Plaintiff on September 10, 2013. (TR. 402-414). On his initial visit, Plaintiff reported that he had lost his job due to diabetic neuropathy and his inability to stand on his feet all day. (TR. 410). Prior to Dr. Duhon's examination, a nurse performed a diabetic foot sensory exam which showed that sensation was "intact." (TR. 409). Dr. Duhon then examined Plaintiff's extremities and noted "diminished sensation." (TR. 413). Ultimately, Dr. Duhon diagnosed diabetes, diabetic peripheral neuropathy, hypertension, dyslipidemia, obesity, and depression. (TR. 413-414). The physician prescribed medication and recommended exercise and a specific weight loss diet. (TR. 413-414).

One week later, Dr. Duhon completed a medical source statement (MSS), outlining Mr. Tomlinson's diagnoses and functional abilities. In the MSS, Dr. Duhon diagnosed diabetic peripheral neuropathy and uncontrolled type 2 diabetes mellitus. (TR. 415). Dr. Duhon described Plaintiff's symptoms as burning pain, numbness, and tingling of his bilateral lower extremities, blurred vision, and depressed mood. (TR. 415). Dr. Duhon based these findings on her examination of Mr. Tomlinson one week prior which had revealed "Decreased sensation to monofilament on bilateral lower extremities." (TR. 415). Dr. Duhon stated that Mr. Tomlinson's lower extremity burning and tingling was "constant" and "moderate to severe," and made worse by standing for long durations. (TR. 415). According to the doctor, Plaintiff's symptoms frequently

interfered with his attention and concentration and would be expected to last at least twelve months. (TR. 416).

With respect to Mr. Tomlinson's exertional capabilities, Dr. Duhon opined that Plaintiff could: (1) lift and/or carry up to 20 pounds occasionally and 10 pounds frequently, (2) walk for less than one city block without rest, (3) stand for approximately 30 minutes at one time, (4) stand/walk for a total of less than 2 hours during an 8-hour workday, and (5) sit for more than 2 hours at one time, for a total of at least 6 hours during an 8-hour workday. (TR. 416-417). Finally, Dr. Duhon stated that Mr. Tomlinson would require a job which allowed: (1) shifting positions at will between sitting, standing, and walking and (2) access to a refrigerator for insulin. (TR. 416, 417).

### C. Error in the Consideration of Dr. Duhon's Opinions

The ALJ acknowledged Dr. Duhon's MSS and stated that the RFC "closely track[ed] Dr. Duhon's limitations for [Plaintiff]." (TR. 30). Indeed, the RFC is consistent with Dr. Duhon's restrictions on Mr. Tomlinson's abilities to lift, carry, walk, sit, and stand. *Compare* TR. 30-31 *to* TR. at 416-417. But the ALJ completely omitted any discussion of Dr. Duhon's opinions that Plaintiff's symptoms would frequently interfere with his attention and concentration and that Mr. Tomlinson would require a job which allowed shifting positions at will and access to a refrigerator. (TR. 416). Presumably, the ALJ rejected these opinions, but his analysis is deficient in several respects.

First, the ALJ failed to articulate the weight, if any, he gave this portion of Dr. Duhon's opinion. And although it is obvious from the decision that the ALJ rejected these opinions, he failed to provide a legitimate reason for doing so. *See* Policy

Interpretation Ruling Titles II and XVI: Giving Controlling Weight to Treating Source Medical Opinions, 1996 WL 374188, at 2 (July 2, 1996) (SSR 96-2p). By means of some explanation, however, the ALJ stated that he "depart[ed] significantly from Dr. Duhan [sic] . . . in the claimant's responsibility for controlling his diabetes." (TR. 31). The ALJ explained:

> [Dr. Duhon] does not refer to [Mr. Tomlinson's] record of noncompliance, stating only that his diabetes is uncontrolled. I believe the records make evident his noncompliance with weight control, diet restrictions, and exercise contributes significantly to the uncontrolled status of his diabetes and hypertension. Mr. Tomlinson has said that if his diabetic symptoms could be better controlled, he would be willing to work. However, the records do not convey the impression that he has been sufficiently proactive in getting control of his symptoms.

(TR. 31).

Before relying on non-compliance as a basis to preclude disability benefits, the adjudicator must consider four elements, each of which must be supported by substantial evidence: (1) the treatment at issue should be expected to restore the claimant's ability to work; (2) the treatment must have been *prescribed;* (3) the treatment must have been refused; and (4) the refusal must have been without justifiable excuse. *Teter v. Heckler*, 775 F.2d 1104, 1107 (10th Cir. 1985) (emphasis in original). The ALJ did not discuss any of these factors, and his failure to do so constitutes reversible error.

First, the ALJ fails to discuss whether diet restrictions, weight control, and exercise would have controlled Plaintiff's diabetes and allowed him to work. The Eastern District of Oklahoma considered a similar situation in *Lyman v. Colvin*, 2014 WL 1153382 (E.D. Okla. Mar. 21, 2014) (unpublished op.). In *Lyman*, the plaintiff suffered

7

from diabetes and the ALJ heavily relied on the plaintiff's alleged noncompliance with prescribed treatment to deny benefits. *Id.* at 3. Although the ALJ was entitled to rely on noncompliance as a factor in his analysis, the ALJ erred in failing to explain how the noncompliance had affected the plaintiff's ability to work. The court explained:

> Although Claimant may have been noncompliant in some aspects of his treatment, the ALJ failed to adequately discuss the effect of his noncompliance upon each of the impairments for which he sought treatment. On remand, the ALJ shall be required to link the evidence of noncompliance with each condition. Noncompliance without good cause alone, however, will not be sufficient to entirely discount an impairment unless it can be shown in the record that Claimant would not suffer such an impairment absent the noncompliance and restore her ability to work. The ALJ shall also discuss whether Claimant was treated for his obesity as the ALJ has implied in his decision and whether Claimant was noncompliant with his treatment. Otherwise, the ALJ is improperly inserting his own perceived proper medical treatment for that of the qualified physicians.

*Id.* (citing *Teter v. Heckler*). *Lyman* is instructive in the instant case. Here, the ALJ stated that Mr. Tomlinson's "noncompliance with weight control, diet restrictions, and exercise contributes significantly to the uncontrolled status of his diabetes and hypertension." (TR. 31). But noncompliance alone is not a sufficient basis to discount the impairment unless it can be shown that compliance would allow the claimant to work. The ALJ failed to discuss whether controlling the diabetes would have restored Mr. Tomlinson's ability to work. Absent this discussion, the ALJ's reliance on noncompliance alone is insufficient.

The ALJ also failed to adequately discuss the second, third, and fourth factors of *Teter*. The second factor requires that "the treatment must have been *prescribed*." *Teter*, at 1107 (emphasis in original). But here, Plaintiff had only received instructions and encouragement regarding weight loss and exercise. *See* TR. 409 (nurse's notes

8

stating: "Patient received diabetic diet instructions at this encounter. Diet: Advised to maintain calorie intake to achieve target weight. Should eat high fiber foods with fat content at less than 25% of daily calorie intake. Dietician consult if desired to assist with diabetic plan and correct calorie intake. Exercise: Exercise is recommended to assist in control of weight and diabetes. It is recommended to walk at least one mile each day at a pace of 15-20 minutes."); TR. 414 (Dr. Duhon's assessment notes, stating "encourage adherence with DASH diet, weight loss. . . .encourage weight loss, adherence with diet, and routine exercise."). As noted in *Teter*, "Recommendations, suggestions, and abstract opinions are not enough." *Teter*, at 1107.

Third, *Teter* requires that the Plaintiff have refused the prescribed treatment in order for the ALJ to rely on noncompliance. Regarding his diet, Mr. Tomlinson testified that he was attempting to control his diet by eliminating sugars, soda, and bread and that he had lost weight. (TR. 58-59). Regarding exercise, Plaintiff testified that he was not aware of a recommendation by his doctor for walking, but he would "try [his] best." (TR. 58). Plaintiff certainly cannot be penalized for failing to comply with a recommendation for walking when he had not been aware of the recommendation.

Finally, *Teter* requires that the adjudicator consider any explanation that the claimant may have for failing to comply with prescribed treatment. When discussing the recommendation for walking, the ALJ cited findings from licensed practical nurse Verda Burks that Plaintiff's feet appeared normal, without ulcers, and with "intact" sensation. (TR. 30, 409). Presumably the ALJ believed that these findings would have allowed Mr. Tomlinson to walk as recommended. Two findings undermine the ALJ's reliance on these findings.

9

First, the same day that the nurse expressed her findings, Dr. Duhon examined the Plaintiff and noted diminished sensation in Plaintiff's lower extremities. (TR. 413-414). And as noted in the MSS, these findings resulted in a diagnosis of peripheral neuropathy and allowed Plaintiff to walk only one city block without rest. (TR. 415-416). But the ALJ erroneously failed to cite Dr. Duhon's findings, instead, relying on the findings of Nurse Burks. *See Hamlin v. Barnhart*, 365 F.3d 1208, 1217 (10th Cir. 2004) ("In addition to discussing evidence supporting his decision, an ALJ must discuss the uncontroverted evidence he chooses not to rely upon, as well as significantly probative evidence he rejects.") (internal quotation marks and citation omitted).

Second, Mr. Tomlinson testified that his ability to walk was compromised by painful sores on the bottoms of his feet which caused stabbing pain, numbness, tingling, and balance issues. (TR. 54-57). Thus, even if Plaintiff had been aware of the recommendation for walking, he may have had a valid excuse for not doing so. *See Miranda v. Barnhart,* 205 Fed. Appx. 638, 642 (10th Cir. 2005) (unpublished op.) ("[T]he adjudicator must not draw any inferences about an individual's symptoms and their functional effects from a failure to seek or pursue regular medical treatment without first considering any explanations that the individual may provide.") (internal quotation marks and citation omitted).

In addition to his failure to explain the effect of noncompliance on Plaintiff's ability to work, the ALJ also appears to have rejected Dr. Duhon's opinion based upon his own speculative lay opinion that claimant failed to comply with prescribed treatment. The ALJ stated: "the records to not convey the impression that [Mr. Tomlinson] has been sufficiently proactive in getting control of his symptoms." (TR. 31).

But the ALJ does not cite any specific evidence in support of his assertion. *See Robinson v. Barnhart*, 366 F.3d 1078, 1083 (10th Cir. 2004) (ALJ improperly relied on noncompliance when treating physician never "expressed or suggested such an opinion."). An ALJ's reliance on his own speculative lay opinion that claimant failed to comply with prescribed treatment, without reference to specific evidence of record is improper. *Id.*

As stated, the ALJ omitted any discussion of Dr. Duhon's opinions that Plaintiff's symptoms would: (1) frequently interfere with his attention and concentration, (2) require a job with a sit-stand-walk option, and (3) require access to a refrigerator. Although not explicitly cited as a basis for rejecting the opinions, the ALJ appeared to rely on Plaintiff's noncompliance with diet and exercise to control his diabetes. But the ALJ's reliance on noncompliance is deficient, as he failed to perform the proper legal analysis and explain the effect of the noncompliance on Plaintiff's ability to work. This failure constitutes reversible error. *See Robinson v. Barnhart*, 366 F.3d 1078, 1084 (10th Cir. 2004) ("the ALJ's speculative conclusion is procedurally and legally deficient because he did not make the findings necessary to deny the claim on the basis of claimant's noncompliance with prescribed treatment.").

### D. No Error in the Consideration of Opinions from State Agency Physicians

Non-examining State Agency physicians Luther Woodcock and Janet Rodgers opined that Plaintiff could: (1) frequently lift and/or carry less than 10 pounds, (2) occasionally lift and/or carry 10 pounds, (3) stand and/or walk at least two hours in an

8-hour workday, and (4) sit about 6 hours in an 8-hour workday. (TR. 375-382). These exertional abilities were less than those opined by Dr. Duhon. *See* TR. 415-418.

The ALJ rejected the opinions from the State Agency physicians, stating:

> I give no weight to the DDS findings at the initial and redetermination levels that the claimant is unable to return to his past work. That is because I fundamentally disagree with the DDS' limitation of the claimant to sedentary work. Based on the claimant's medical records, including the claimant's own treating source, I find the claimant's residual functional capacity is more properly considered to be in the less than light range.

(TR. 31).

According to the Plaintiff, the ALJ improperly rejected the opinions from Drs. Woodcock and Rodgers by providing a "conclusory and unsupported" rationale. (ECF No. 18:19). Plaintiff attempts to discount the ALJ's reliance on Dr. Duhon's opinion by stating that Dr. Duhon was "only an examining rather than a treating source given that she saw Mr. Tomlinson only once." (ECF No. 18:19). It is true that Dr. Duhon only examined Plaintiff one time prior to issuing her MSS. However, the initial visit was to establish primary care for Mr. Tomlinson and Dr. Duhon as Plaintiff's treating physician. *See* TR. 402, 410. But regardless of whether Dr. Duhon was considered Plaintiff's treating source or merely an examining physician, the ALJ was entitled to give more weight to Dr. Duhon's opinion over the opinion of a non-examining source. *See Daniell v. Astrue*, 384 Fed. Appx. 798, 799 (10th Cir. June 29, 2010) (unpublished op.) ("When an ALJ considers medical opinions, the opinion of a non-examining physician is generally entitled to the least weight of all[.]"). As a result, the Court rejects this argument.

## VI. PLAINTIFF'S REMAINING ARGUMENTS

Plaintiff also alleges the ALJ: (1) failed to perform a proper step four analysis and (2) erred in considering Mr. Tomlinson's "borderline" age at step five. But the Court need not consider these allegations as the RFC and any findings at step five will likely be affected following the reconsideration of Dr. Duhon's opinion. *See Robinson v. Barnhart*, 366 F.3d 1078, 1085 (10th Cir. 2004) ("We will not reach the remaining issues raised by claimant because they may be affected by the ALJ's resolution of this case on remand.").

## ORDER

Having reviewed the medical evidence of record, the transcript of the administrative hearing, the decision of the ALJ, and the pleadings and briefs of the parties, the undersigned magistrate judge **REVERSES** the Commissioner's decision and **REMANDS** the matter for further administrative findings.

ENTERED on June 10, 2016.

_____
SHON T. ERWIN
UNITED STATES MAGISTRATE JUDGE